# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| **GENOA HEALTHCARE, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**NISHI SONI, HIMANSHU PATEL, and SAI HEALTHWAY PHARMACY, LLC,**<br><br>Defendants. | NO. 5:21-CV-00361<br><br>JURY DEMAND |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Genoa Healthcare, LLC ("Genoa") files this Original Complaint against Nishi Soni ("Soni"), Himanshu Patel ("Patel"), and SAI Healthway Pharmacy, LLC ("Healthway") (Soni, Patel, and Healthway collectively, "Defendants"), and shows the following in support:

## I.
## INTRODUCTION

1.  Soni is a former trusted Genoa employee who served as the lead pharmacist at Genoa Healthcare Pharmacy in San Antonio, Texas. Unfortunately, Soni was not a loyal employee. Genoa recently discovered that Soni, while still employed by Genoa and acting in concert with Patel, engaged in a scheme to divert hundreds of drug prescription orders from Genoa to Healthway.

2.  Genoa also discovered that Soni, acting in concert with Patel and in order to carry out the conspiracy, used her position with Genoa to induce a medical services provider—a Genoa client with a contractual obligation to send drug prescriptions to Genoa—to unknowingly sign an agreement with Healthway that provided for Healthway to fill the medical provider's drug prescriptions. Soni then used her access to Genoa's proprietary online prescription management

program and the client's proprietary internal computer system to divert patient prescription orders intended for Genoa to Healthway.

3. After the client's patients started questioning the unauthorized diversion of their prescriptions to Healthway, an investigation uncovered the conspiracy. Before Genoa could take action against Soni, Soni resigned her employment, feigning that she needed to spend time taking care of a sick family member.

4. Soni owed, and continues to owe, confidentiality and nondisclosure obligations to Genoa. By using Genoa's confidential information and client relationships to divert Genoa business to a competing pharmacy, Soni breached her obligations, caused substantial harm to Genoa and its client, compromised patient information and trust, and enriched herself, Patel, and Healthway at Genoa's expense.

5. Genoa brings this action to recover the actual damages it suffered as a result of Soni, Patel, and Healthway's unlawful diversion of Genoa's business and related unlawful conduct.

## II.
## PARTIES

6. Plaintiff Genoa Healthcare, LLC is the largest provider of pharmacy, outpatient telepsychiatry, and clinical services in the country.

7. Defendant Nishi Soni is a resident of Texas and, on information and belief, currently resides at 26 Sable Vly, San Antonio, Texas 78258. Soni worked as a Community Pharmacist for Genoa in San Antonio, Texas. In that role, Soni had access to Genoa's critical confidential and proprietary data, networks, systems, and information, including protected patient data and prescription orders.

8. Defendant Himanshu Patel is a resident of Texas and, on information and belief, currently resides at 322 Evans Oak Lane, San Antonio, Texas 78260. On information and belief, Patel is the sole owner of SAI Healthway Pharmacy, LLC, in San Antonio, Texas. On information and belief, Patel and Soni are family relatives.

9. Defendant SAI Healthway Pharmacy, LLC, is a Texas limited liability company whose sole owner, on information and belief, is Himanshu Patel. SAI Healthway Pharmacy, LLC operates Healthway Pharmacy, a retail pharmacy located in Live Oak, Texas.

## III.
## JURISDICTION AND VENUE

10. This Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331 over this action because Genoa alleges violations of two federal statutes which grant original jurisdiction to the Court: (1) violations of the Defend Trade Secrets Act (DTSA), 18 U.S.C. §§ 1831-39 and (2) violations of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030.

11. This Court has supplemental subject matter jurisdiction pursuant to 28 U.S.C. § 1367 over the other state claims alleged because those claims are related to the federal claims asserted and form part of the same case or controversy.

12. Venue is proper in this judicial district and division because a substantial part of the events or omissions giving rise to the claims occurred in this venue, and Defendants are subject to personal jurisdiction in this venue.

## IV.
## FACTUAL BACKGROUND

*Soni's Employment with Genoa*

13. Soni began working for Genoa as a Community Pharmacist in 2016.

14. In her role, Soni managed Genoa's pharmacy located at 8535 Tom Slick #104, San Antonio, Texas 78229, and worked directly with medical providers to process and fill patient prescriptions.

15. By virtue of her position, Soni had access to Genoa's confidential, proprietary, and trade secret information, including Genoa's online prescription management program, through which Genoa received and processed prescription orders received from medical providers and delivered those filled prescriptions to the provider's patients. This online prescription management program, and the information on it, is highly valuable to Genoa.

16. In light of that value, Soni was required as a condition of employment to execute an employment agreement containing obligations to maintain the confidentiality of the company's information and not to use that information for any purpose other than for the benefit of Genoa:

> 2. **CONFIDENTIAL INFORMATION**: Employer will make available to Employee confidential and proprietary information of the Employer, including, but not limited to, information regarding operational methods, technical processes, costs, profits, markets, sales, products, key personnel, pricing policies, other business affairs and methods, and plans for future developments (collectively referred to below as "Confidential Information"). Confidential Information shall not include information that: (a) is generally known or available or becomes generally available to the public other than as a result of a disclosure by Employee; (b) was already known by or available to Employee on a non-confidential basis prior to its disclosure by the Employer; or (c) becomes available to Employee on a non-confidential basis from a source other than the Employer and/or its representatives, provided that such source is not known by Employee to be bound by a confidentiality agreement with or other obligation of secrecy to the Employer.
> Employee agrees that the Confidential Information will be used solely for the legitimate purposes of Employer, not for any other purpose, and that such Confidential Information will be kept strictly confidential by Employee. During his employment with Employer and forever thereafter, Employee will not disclose any Confidential Information to anyone, except with the advance written consent of Employer or pursuant to a proper and duly authorized legal subpoena or comparable legal process (provided Employee has first given Employer adequate advance notice of such subpoena or comparable legal process). Upon request, Employee will promptly deliver to Employer all copies or records in any form of tangible Confidential Information.
>
> 3. **LOYALTY**: Employee acknowledges, during employment with Employer, an obligation of loyalty and agrees to not set up or aid the activities of any business competitive with Employer's business or participate in any activity competitive with and/or harmful to Employer's business activities or plans. This includes an obligation to fully offer to Employer any business opportunities which become available to Employee throughout employment with Employer.

17. After Soni executed the agreement, she continued employment with Genoa and received continual access to Genoa's confidential, proprietary, and trade secret information, including information about Genoa's business relationships and patients.

***Soni and Patel Interfere with Genoa's Client Relationship and Divert Business Away from Genoa***

18. In October 2020, medical services provider Integrated Medical Services ("IMS") approached Genoa to discuss IMS's prescription fulfillment needs.

19. The two companies discussed a partnership in which Genoa would fill all IMS prescriptions at Genoa's pharmacy in San Antonio, managed by Soni. Genoa, in turn, would provide an onsite consumer medication coordinator that would transmit prescriptions to Genoa's pharmacy, ensure compliance with the Board of Pharmacy Rules and Regulations, assist IMS to maintain its medication inventory, and process prescription orders and refills.

20. On or about October 24, 2020, as a culmination of those discussions, Genoa and IMS memorialized their agreement by executing a "Medication Services Agreement."

21. Pursuant to the Medication Services Agreement, Genoa proposed an individual to serve as the onsite consumer medication coordinator at IMS's location. On information and belief, without Genoa's knowledge or consent, Soni discouraged IMS from consenting to the individual Genoa proposed and recommended a different individual for the role. Soni subsequently presented her preferred candidate for onsite consumer medication coordinator to IMS. Believing Genoa was aware of and approved the candidate suggested by Soni, IMS accepted.

22. While the onsite consumer medication coordinator was intended to be a Genoa employee, she was employed and paid by Healthway and was acting at the direction of Soni and Patel to the benefit of Healthway and detriment of IMS and Genoa. Among other things, Soni instructed her selected coordinator to send IMS prescriptions directly to Healthway and Patel instead of Genoa.

23. On information and belief, after Genoa and IMS executed the Medication Services Agreement, Soni and Patel, who represented themselves to be siblings, visited the IMS pharmacy

and presented IMS's owner, Charlotte Ballard, a document Ballard believed related to IMS's Medication Services Agreement with Genoa. Instead, as Genoa later discovered, the document was an exact copy of Genoa's "Medication Services Agreement" from which Soni had removed Genoa's name and replaced it with Healthway's. Believing it to be Genoa's document and based upon Soni's representations, Ballard signed the agreement on behalf of IMS. Patel signed on behalf of Healthway.

### *Soni Diverts Prescriptions from Genoa to Healthway*

24. Beginning in December 2020, IMS patients began complaining to IMS that Healthway was filling and delivering their medications instead of Genoa. This was otherwise unknown to IMS or Genoa.

25. Genoa and IMS conducted internal investigations into the patient complaints and discovered that Soni, without IMS's or the patient's knowledge or consent, used her access to IMS's computer system to send or divert patient prescriptions directly from IMS to Healthway.

26. Genoa's internal investigation uncovered that Soni conducted a similar scheme via Genoa's online prescription management program. Specifically, Soni unlawfully accessed Genoa's online program, to which she had limited access by virtue of her employment, and diverted IMS prescriptions from Genoa to Healthway. To date, Genoa has identified at least 500 prescription orders from IMS which Soni unlawfully diverted from Genoa to Healthway, either directly through IMS's system or by transferring prescriptions already received by Genoa's system.

27. Further, Soni converted physical pills of the prescription drug Ingrezza from Genoa's inventory and delivered them to Patel and Heathway to fill and deliver to patients. On information and belief, Healthway does not have distribution rights to fill Ingrezza prescriptions.

28.     At the time of this filing, Genoa has reason to believe Soni converted approximately 1000 pills of Ingrezza, valued at approximately $270,000.00.

## V.
## CLAIMS FOR RELIEF

**Count 1: Violations of The Defend Trade Secrets Act—18 U.S.C. §§ 1831-39—All Defendants**

29.     Genoa adopts and realleges each and every allegation previously set forth in this Complaint as if fully set forth herein.

30.     Genoa owns and possess certain trade secret information, including but not limited to patient lists, prescription information, and medical records. The trade secrets have actual or potential independent economic value from their disclosure and/or use and Genoa has undertaken robust efforts to maintain the secrecy of the trade secrets. Genoa's trade secrets are not readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

31.     Defendants improperly acquired the trade secrets with knowledge of or reason to know that the trade secrets were acquired by improper means and, on information and belief, Defendants used and disclosed the trade secrets acquired by illegal means without Genoa's knowledge and/or consent.

32.     Defendants' unlawful acquisition of Genoa's trade secrets was intentional, knowing, willful, malicious, fraudulent, and oppressive.

33.     As the direct proximate cause of Defendants' unlawful acquisition and use of Genoa's trade secrets, Genoa suffered significant damages.

**Count 2: Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030—Defendant Soni**

34. Genoa adopts and realleges each and every allegation previously set forth in this Complaint as if fully set forth herein.

35. Genoa's computer network and server are "protected computers" as that term is defined in 18 U.S.C. § 1030(e)(2)(B) because they are connected to the internet and used in interstate commerce and communication in the course of Genoa's business.

36. Soni knowingly and intentionally accessed Genoa's network and server, and manipulated and diverted Genoa's property in the form of the prescriptions and patient information belonging to Genoa. Soni's knowing and intentional access was without authorization and/or exceeded her granted authority, and she thereafter obtained and used information from a protected computer in violation of 18 U.S.C. § 1030(a)(2)(C).

37. Soni further recklessly and/or intentionally caused damage and loss to Genoa in violation of 18 U.S.C. §§ 1030(a)(5)(B) and (C). As Genoa's investigation is still ongoing, it is unable to state the full extent of its damages, including injury and harm arising from Soni's unauthorized access, manipulation, and diversion of Genoa-owned prescriptions and information. Genoa's damages exceed $5,000 in loss in a one-year period.

**Count 3: Misappropriation of Trade Secrets—Texas Uniform Trade Secrets Act—All Defendants**

38. Genoa adopts and realleges each and every allegation previously set forth in this Complaint as if fully set forth herein.

39. Genoa's trade secrets include, among others, its electronic database of patient information and prescriptions, data management methods, and access to medical providers' systems.

40. Genoa derives independent economic value from its trade secrets not being generally known or readily ascertainable by legal means which gave Genoa an economic advantage over competitors.

41. Genoa took steps that were reasonable under the circumstances to maintain the secrecy of the trade secrets, including limiting access to the trade secrets to a discrete number of individuals within Genoa and requiring employees with access to the information, including Soni, to execute agreements requiring confidentiality and non-disclosure.

42. Genoa's trade secrets and other sensitive proprietary information were known only to appropriate employees involved in the business, including Soni, Genoa's Community Pharmacist and a trusted employee. This information was not shared with others outside of Genoa management, and was secured on a password protected computer system. Additionally, Genoa secured a non-disclosure agreement from Soni, who held a position of trust and confidence, had a duty to maintain the secrecy of Genoa's trade secrets, and to not use them except for the benefit of Genoa.

43. In breach of her duty, Soni unlawfully used Genoa's trade secrets, without Genoa's express of implied consent, to her benefit and to Genoa's detriment.

44. As a result, Genoa suffered damages within the jurisdiction of this Court.

**Count 4: Harmful Access to Computer (HACA), Tex. Civ. Prac. & Rem. Code § 143.001—Defendant Soni**

45. Genoa adopts and realleges each and every allegation previously set forth in this Complaint as if fully set forth herein.

46. Soni knowingly and intentionally accessed Genoa's computer network and server for the purpose of diverting Genoa's property and business opportunities to Defendants Patel and Healthway.

47. Soni's access to Genoa's computer network and/or server was without the effective consent of Genoa, as any consent given by Genoa was not for the purpose of allowing Soni to divert Genoa's property or business to a competing company.

48. As a result, Genoa suffered damages within the jurisdiction of this Court.

**Count 5: Tortious Interference with Existing Contract—All Defendants**

49. Genoa adopts and realleges each and every allegation previously set forth in this Complaint as if fully set forth herein.

50. Genoa entered into a valid contract with IMS.

51. Defendants had actual knowledge of the contract between Genoa and IMS.

52. Defendants had knowledge of facts and circumstances that would lead a reasonable person to believe there was a contract in which Genoa had an interest.

53. Defendants interfered with the contract between Genoa and IMS by, among other things, inducing IMS to sign a contract with Healthway and Patel, using Genoa's own confidential information to do so.

54. Defendants further interfered with the contract by unlawfully diverting prescriptions intended for Genoa to Healthway.

55. Defendants' interference was intentional and was the proximate cause of Genoa's damages.

**Count 6: Breach of Contract—Defendant Soni**

56. Genoa adopts and realleges each and every allegation previously set forth in this Complaint as if fully set forth herein.

57. Genoa entered into a written agreement with Defendant Soni.

58. Specifically, Soni agreed that Genoa's "Confidential Information" will be used solely for the legitimate purposes of [Genoa], not for any other purpose, and that such "Confidential Information" will be kept strictly confidential by [Soni].

59. Genoa performed under the agreement by providing Soni with access to confidential, proprietary, and trade secret information, and Soni failed to honor her obligations under that agreement.

60. Soni breached the agreement by unlawfully accessing Genoa's information, diverting it to Defendants Patel and Healthway, and using it for the illegitimate purpose of benefiting Genoa's competitor.

61. Genoa has suffered damages within the jurisdictional limits of this Court.

**Count 7: Breach of Fiduciary/Quasi-Fiduciary Duty—Defendant Soni**

62. Genoa adopts and realleges each and every allegation previously set forth in this Complaint as if fully set forth herein.

63. Soni managed Genoa's Genoa Health Pharmacy as Community Pharmacist. As Community Pharmacist and supervisor of Genoa's pharmacy operations in San Antonio, Soni occupied a position of fiduciary trust and confidence.

64. Placing its trust and confidence in Soni, Genoa shared highly sensitive information with Soni, including access to Genoa's computer network and server containing the confidential information of Genoa and its medical providers.

65. Rather than represent Genoa's best interests, Soni put her own interests first by diverting valuable prescription orders, intended for Genoa, to a competing venture.

66. In so doing, Soni breached her fiduciary duty to Genoa to Genoa's detriment and for her benefit.

67. As a result, Genoa suffered damages within the jurisdiction of this Court.

**Count 8: Conspiracy—All Defendants**

68. Genoa adopts and realleges each and every allegation previously set forth in this Complaint as if fully set forth herein.

69. As described more fully above, each of the defendants conspired directly or indirectly, for the purpose of unlawfully accessing Genoa's online prescription management program and using it to divert drug prescriptions away from Genoa and to the Defendants.

70. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

71. Defendants' conspiracy was the actual and proximate cause of Genoa's damages.

## VI.
## JURY DEMAND

72. Genoa submits its demand for a jury trial on all issues and claims in this action.

## VII.
## CONCLUSION AND PRAYER

For the above reasons, Plaintiff Genoa Healthcare, LLC, requests the Defendants be cited to appear and that, after a jury trial, the Court award Genoa actual damages, pre- and post-judgment interest, costs, attorneys' fees, and all such other and further relief, at law or in equity, to which it is justly entitled.

Respectfully submitted: */s/ Allan H. Neighbors, IV*
Allan H. Neighbors, IV
State Bar No. 24033660
aneighbors@littler.com
Littler Mendelson, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 951-9400
Facsimile: (713) 951-9212

**ATTORNEYS FOR PLAINTIFF
GENOA HEALTHCARE, LLC**